# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| KATANA SILICON TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD.;<br>SAMSUNG ELECTRONICS AMERICA, INC.;<br>SAMSUNG SEMICONDUCTOR, INC.; AND<br>SAMSUNG AUSTIN SEMICONDUCTOR, LLC,<br><br>Defendants. | Case No.: 6:19-cv-344<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Katana Silicon Technologies LLC ("Katana"), for its Complaint against Defendants Samsung Electronics Co., LTD ("SEC"), Samsung Electronics America, Inc. ("SEA"), Samsung Semiconductor, Inc. ("SSI"), and Samsung Austin Semiconductor, LLC ("SAS") (collectively, "Samsung") states as follows:

## NATURE OF THE CASE

1.       This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285.

## PARTIES

2.       Plaintiff Katana Silicon Technologies LLC is a corporation organized and existing under the laws of the State of Texas, with its principal place of business at 8105 Rasor Boulevard, Suite 210 Plano, Texas 75024.

3.      Defendant SEC is a corporation organized and existing under the laws of the Republic of Korea, and located at 129 Samsung-ro, Yeongtong-gu, Suwon-si, Gyeonggi-do, Republic of Korea.

4.      Defendant SEA is a corporation organized and existing under the laws of the state of New York, with its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660. SEA may be served through its registered agent for service of process, CT Corporation System, 1999 Bryan St., Suite. 900, Dallas, Texas 75201.

5.      Defendant SSI is a corporation organized and existing under the laws of the State of California, with its principal place of business at 3655 North First Street, San Jose, California 95134. Defendant SSI may be served with process through its registered agent National Registered Agents, Inc., 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

6.      Defendant SAS is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 12100 Samsung Boulevard, Austin, Texas 78754. Defendant SAS may be served with process through its registered agent C T Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201.

7.      Defendant SAS is a wholly-owned subsidiary of Defendant SSI, which is a wholly-owned subsidiary of SEA, which is a wholly-owned subsidiary of SEC.

8.      Defendants have and/or maintain authorized sellers and sales representatives that offer and sell products pertinent to this Complaint throughout the State of Texas, including this District and to consumers throughout this District, such as: AT&T Store at 4330 W Waco Drive, Waco, TX 76710; Verizon Authorized Retailer at 2812 W Loop 340, Suite# H-12, Waco, TX, 76711; Best Buy at 4627 S Jack Kultgen Expy, Waco, TX 76706; and Amazon.com.

## JURISDICTION AND VENUE

9.      This action arises under the patent laws of the United States, Title 35 of the United States Code ("U.S.C.") § 101 *et seq.*

10.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1338(a).

11.     Defendants are subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, by virtue of at least to its substantial business conducted in this forum, directly and/or through intermediaries, including (i) having solicited business in the State of Texas, transacted business within the State of Texas and attempted to derive financial benefit from residents of the State of Texas, including benefits directly related to the instant patent infringement causes of action set forth herein; (ii) having placed its products and services into the stream of commerce throughout the United States and having been actively engaged in transacting business in Texas and in this District; and (iii) either alone or in conjunction with others, having committed acts of infringement within Texas and in this District.

12.     On information and belief, within this District Defendants directly and/or through intermediaries have advertised (including through websites), offered to sell, sold and/or distributed infringing products, and/or have induced the sale and use of infringing products in the United States and in Texas.

13.     On information and belief, each Defendant has, directly or through its distribution network, purposefully and voluntarily placed such products in the stream of commerce knowing and expecting them to be purchased and used by consumers in Texas.

14.     On information and belief, each Defendant has committed direct infringement in Texas.

15.     On information and belief, each Defendant has either committed indirect infringement based on acts of direct infringement in Texas.

16.     On information and belief, Defendants have derived substantial revenues from their infringing acts in this District, including from their manufacturing and sale of infringing products in the United States.

17.     Venue is proper against SEC in this District pursuant to 28 U.S.C. § 1391(c)(3) because venue is proper in any district against a foreign corporation.

18.     Venue is proper against SEA, SSI, and SAS in this District pursuant to 28 U.S.C. § 1400(b) because each has committed acts of infringement in this District and has a regular and established place of business in this District.

19.     Without limitation, on information and belief, within this District, Defendants directly and/or through intermediaries, have advertised (including through websites), offered to sell, sold and/or distributed infringing products, and/or have induced the sale and use of infringing products.

20.     On information and belief, each Defendant has transacted, and at the time of the filing of the Complaint, is continuing to transact business within this District.

21.     On information and belief, each Defendant exercises direction and control over the performance of each other Defendant, or they form a joint enterprise such that the performance by one Defendant is attributable to each other Defendant.

**BACKGROUND**

22.     On September 18, 2001, U.S. Patent Number 6,291,861 (the "'861 Patent"), entitled "Semiconductor Device and Method for Producing the Same," was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '861 Patent is attached as Exhibit A to this Complaint.

4

23.     The '861 Patent issued from U.S. patent application Serial Number 09/345,414 filed on June 30, 1999 and discloses and relates to the design and process of fabricating semiconductor devices.

24.     The '861 Patent claims patent-eligible subject matter and is valid and enforceable.

25.     Katana is the sole owner of all rights, title, and interest in and to the '861 Patent including the right to sue for and collect past, present, and future damages and to seek and obtain injunctive or any other relief for infringement of the '861 Patent.

26.     On September 18, 2001, U.S. Patent Number 6,677,212 (the "'212 Patent"), entitled "Elevated Source/Drain Field Effect Transistor and Method for Making the Same," was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '212 Patent is attached as Exhibit B to this Complaint.

27.     The '212 Patent issued from U.S. patent application Serial Number 11/252,892 filed on September 6, 2000 and discloses and relates to the design and process of fabricating semiconductor devices.

28.     The '212 Patent claims patent-eligible subject matter and is valid and enforceable.

29.     Katana is the sole owner of all rights, title, and interest in and to the '212 Patent including the right to sue for and collect past, present, and future damages and to seek and obtain injunctive or any other relief for infringement of the '212 Patent.

30.     More specifically, the '861 Patent and '212 Patent are directed towards field-effect transistors ("FETs").

31.     Transistors are semiconductor devices that are formed on wafers, which are made by foundries. Wafers contain multiple, identical chips which are designed by chip designers. Individual chips are cut from wafers and packaged. Those chips go into a variety of consumer

5

products, such as smartphones, tablets, personal computers, and automobile parts and components.

32.     A chip designer designs its own chips that go into consumer products. A "fabless" chip designer uses and/or contracts with foundries to manufacture chips. A foundry manufactures chips for its customers, which may include chip customer companies. A chip customer company then incorporates those chips into its consumer products. For example, Samsung is a foundry, chip designer, and consumer product company. As a further example, Qualcomm is a chip designer and contracts Samsung for foundry services. Samsung and Qualcomm chips are incorporated into a variety of products, including Samsung's own products.

33.     Samsung owns and operates a fabrication facility in Austin, Texas (S2-line), which manufacturers at least some of the infringing semiconductor devices. *See* Ex. C (Overview of Samsung Austin Semiconductor); https://www.samsung.com/us/sas/Company/History (last visited May 30, 2019).

34.     Defendant SEC is composed of three business units. One business unit (the CE Division) makes and sells consumer electronics, such as televisions and refrigerators. A second business unit (Mobile Division) makes and sells mobile devices, such as smartphones and tablets. A third business unit (LSI Division) makes and sells semiconductor chips, such as application processors, which are incorporated into smartphones, such as those made and sold by the Mobile Division.

35.     The LSI Division serves both internal and external customers. Internal customers may refer to, for example, the Samsung Mobile Division. External customers refer to chip customer companies.

36.     Defendant SEA is the U.S. subsidiary that sells Samsung's consumer electronics and mobile devices in the United States, including those that incorporate the infringing technologies.

37.     Defendant SSI is the entity that operates a research and development center and sells semiconductor chips that incorporate the infringing technologies.

38.     Defendant SAS is the U.S. subsidiary that mass produces semiconductor devices, at the fab in Austin, Texas, which serves U.S. customers (external customers).

## THE ACCUSED INSTRUMENTALITIES

39.     Defendants make, use, sell, offer for sale, and/or import into the United States semiconductor devices, processor chips incorporating such semiconductor devices, and/or consumer products incorporating such processor chips that infringe at least claims 1-11, 16-20, 22, and 24 of the '861 Patent and at least claims 4, 6, and 8 of the '212 Patent ("Accused Instrumentalities").

40.     The Accused Instrumentalities include, but are not limited to, Samsung's 2D planar technologies such as its 20nm planar technology ("Planar Technology") and Samsung's bulk FinFET technologies, such as its 14nm, 11nm, 10nm, 8nm, and 7nm bulk FinFET technologies, which include but are not limited to the 14LPU, 11LPP 10LPE, 10LPP, 10LPU, 8LPP, and 7LPP nodes ("FinFET Technology"). *See* Ex. D (Overview of Samsung's FinFET Technology);     https://www.samsung.com/semiconductor/minisite/exynos/technology/finfet-process/ (last accessed May 30, 2019).

41.     The Accused Instrumentalities also include processor chips that incorporate Samsung's Planar Technology, such as Samsung's Exynos 5 Octa processors, including, but not

limited to the Exynos 5430 and Samsung's Exynos 7 Octa processors, including, but not limited to the Exynos 5433 ("Planar Transistor Chips").

42.     The Accused Instrumentalities also include processor chips that incorporate Samsung's FinFET Technology, such as Samsung's Exynos 5 Series of processors, including, but not limited, to the Exynos 7872; Samsung Exynos 7 Dual processors, including, but not limited to  the Exynos 7270; Samsung's Exynos 7 Octa processors, including, but not limited to the Exynos 7420; Samsung's Exynos 8 Octa processors, including, but not limited to the  Exynos 8890; Samsung's Exynos 7 Series of processors, including, but not limited to the Exynos 9610; Samsung's Exynos 9 Series of processors, including, but not limited to the Exynos 8895 and Exynos 9810; and processors Samsung manufacturers for its chip customers, including, but not limited to Qualcomm's Snapdragon 835, Snapdragon 845, and Centriq 2400 line of processors ("FinFET Chips").

43.     The Accused Instrumentalities also include consumer products that incorporate the Planar Transistor Chips, including, but not limited to Samsung smartphones such as the Galaxy Alpha and Galaxy Note 4; third-party smartphones such as the Meizu MX4 Pro; and Samsung Chromebooks such as the 13.3 Samsung Chromebook 2 ("Planar Products").

44.     The Accused Instrumentalities also include consumer products that incorporate the FinFET Chips, including, but not limited to Samsung smartphones such as the Galaxy A7, Galaxy Tab S2, Galaxy S6, Galaxy S6 Edge, Galaxy S6 Active, Galaxy S6 Edge+, Galaxy J5 Prime, Galaxy S8, Galaxy  S8  Active, Galaxy S8+, Galaxy S9, Galaxy S9+, Galaxy Note 5, Galaxy Note 8, and Galaxy Note 9; third-party smartphones such as the Meizu 15 Plus, Meizu M6s, Meizu PRO 6 Plus, and Meizu PRO 5; Samsung tablets such as the Galaxy Tab Active2, Galaxy Tab S2, and Galaxy Tab A 10.1; Samsung smartwatches such as the Gear Sport, Gear S3

frontier, and Gear S3 classic; third-party virtual reality headsets such as the Alcatel Vision, Idealens K2 VR, and DeePoon M2; and automotive products and platforms, such as advanced driver assistance and infotainment systems, that are manufactured using Samsung's FinFET Technology, including but not limited to the Exynos Modem 5100 and Exynos Auto for vehicles ("FinFET Products").

## COUNT I – INFRINGEMENT OF THE '861 PATENT

45.     Katana hereby realleges paragraphs 1 through 44 as though fully set forth herein.

46.     Defendants directly and/or through its subsidiaries, affiliates, agents, and/or business partners, have in the past and continue to directly infringe at least claims 1-11, 16-20, 22, and 24 of the '861 Patent pursuant to 35 U.S.C. §§ 271(a) by making, using, selling,  or offering to sell, and/or importing in the United States, the Accused Instrumentalities, including but not limited to the accused Planar Technology, Chips, and Products and the accused FinFET Technology, Chips, and Products.

47.     On information and belief, the Planar Transistor Chips and FinFET Chips manufactured by Defendants (and/or other related entities that it controls) include a semiconductor device comprising a device separation region and an active region, the semiconductor device including a gate having a gate dielectric film and a side wall spacer, a source/drain, and a contact which is electrically coupled to the source/drain, wherein the active region is in contact with the gate dielectric film at a surface of the active region coincident with a first surface, a portion of the source/drain being located above the first surface; and wherein the contact is in contact with the source/drain at a source/drain surface defining a second surface, the second surface passing through a segment connecting a first point on the source/drain surface in contact with the device separation region to a second point on an edge of the source/drain surface in contact with the side wall spacer, constituting an angle with respect to the first surface.

48.     On information and belief, the Planar Transistor Chips and FinFET Chips manufactured by Defendants (and/or other related entities that they control) include a semiconductor device comprising a device separation region and an active region, the semiconductor device including: a gate having a side wall spacer and a gate dielectric film; a source/drain, said source/drain having a region above a first surface coincident with a surface of the active region, said source/drain having a source/drain surface in a second surface defined by a segment connecting a first point on the source/drain surface in contact with the device separation region to a second point on an edge of the source/drain surface in contact with the side wall spacer, said second surface being arranged at an angle with respect to the first surface, wherein a portion of the source/drain partially covers the device separation region; and a contact electrically coupled to the source/drain, wherein the active region is in contact with the gate dielectric film at the surface of the active region.

49.     On information and belief, the Planar Transistor Chips and FinFET Chips manufactured by Defendants and/or other related entities that they control, include a semiconductor device, comprising: a gate dielectric film provided beneath a gate electrode on a substrate, said gate electrode and gate dielectric film sandwiched by a pair of vertical insulating film walls, said gate dielectric film and gate electrode having an equal width as viewed in a cross-sectional plane; and a pair of source/drains, each of the source/drains having a vertical face that meets a corresponding vertical insulating film wall so as to sandwich said gate dielectric film, gate electrode, and vertical insulating film walls therebetween, and having a first continuous angular face that slopes downward from a junction with its vertical face and corresponding vertical insulating film wall to a corresponding device separation region.

50.     On information and belief, the accused Planar Technology, Chips, and Products are materially the same with respect to infringement. The Planar Technology, Chips, and Products are based on the same or substantially similar design rules and utilize the same or substantially similar architecture.

51.     On information and belief, the accused FinFET Technology, Chips, and Products are materially the same with respect to infringement. The FinFET Technology, Chips, and Products are based on the same or substantially similar design rules and utilize the same or substantially similar architecture. *See* Ex. D (Overview of Samsung's FinFET Technology); https://www.samsung.com/semiconductor/minisite/exynos/technology/finfet-process/ (last accessed May 30, 2019).

52.     Defendants, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, have committed and continue to commit acts of indirect infringement, including at least claims 1-11, 16-20, 22, and 24, pursuant to 35 U.S.C. §§ 271(b) and 271(c) by actively inducing or contributing to the acts of direct infringement performed by others in the United States, the State of Texas, and the Western District of Texas.

53.     Defendants have actual notice of the '861 Patent and the infringement alleged herein at least as early as July 2, 2018.

54.     On information and belief, Defendants have numerous lawyers and other active agents of Defendants and of its owned and controlled subsidiaries who regularly review patents and published patent applications relevant to technology in the fields of the Patents-in-Suit, specifically including patents directed to semiconductor devices issued to competitors such as Sharp, the original assignee of the '861 Patent.

55.     On information and belief, the Defendants themselves have been issued over 117,000 patents held in the name of one of the Defendants or a related entity, many of which are patents prosecuted in the USPTO in the same technology area as the '861 Patent, giving Defendants intimate knowledge of the art in fields relevant to this civil action. The timing, circumstances and extent of Defendants obtaining actual knowledge of the '861 Patent prior to the commencement of this lawsuit will be confirmed during discovery.

56.     Defendants have induced and continue to induce through affirmative acts by each other, its customers, and other third parties, such as fab-less designers of Planar Transistor Chips and end-consumers of Planar Products, to directly infringe the '861 Patent by making, using, selling, and/or importing the Accused Instrumentalities.

57.     Defendants have induced and continue to induce through affirmative acts by each other, its customers, and other third parties, such as fab-less designers of FinFET Chips and end-consumers of FinFET Products, to directly infringe the '861 Patent by making, using, selling, and/or importing the Accused Instrumentalities.

58.     The affirmative acts of inducement by Defendants include, but are not limited to, any one or a combination of: (i) designing infringing processors for manufacture according to specification; (ii) collaborating on and/or funding the development of the infringing processors and/or technology; (iii) soliciting and sourcing the manufacture of infringing processors; licensing and transferring technology and know-how to enable the manufacture of infringing processors; (v) enabling and encouraging the use, sale, or importation of infringing processors; enabling and encouraging the use, sale, or importation of infringing processors by its customers; and (vi) advertising the infringing processors and/or technology.

59.     Defendants knew that the induced conduct would constitute infringement, and intended that infringement at the time of committing the aforementioned acts, such that the acts and conduct have been and continue to be committed with the specific intent to induce infringement, or deliberately avoiding learning of the infringing circumstances at the time of committing these acts so as to be willfully blind to the infringement that was induced.

60.     Defendants have contributed and continue to contribute to the direct infringement of the '861 Patent by each other, its customers, and other third parties.

61.     Defendants import, export, make or sell parts, components, or intermediate products to customers and third parties that, once assembled, infringe upon the '861 Patent by the sale and/or use of the assembled processors and/or devices.

62.     Defendants make, use, sell, and/or offer to sell infringing semiconductor devices and/or processor chips, which are especially made to design and specification, and are not staple products or commodities with substantial non-infringing use.

63.     Defendants have failed to take adequate steps to determine whether or not they were infringing or would infringe the '861 Patent, despite having been on notice of and lacking permission to practice the '861 Patent.

64.     Therefore, Defendants are liable for infringement of the '861 Patent and its infringement has been and continues to be willful in nature.

65.     Plaintiff Katana has incurred and will continue to incur substantial damages, including monetary damages.

66.     Plaintiff Katana has been and continues to be irreparably harmed by Defendants' infringement of the '861 Patent.

67.     Therefore, Plaintiff Katana is entitled to an injunction, actual and/or compensatory damages, reasonable royalties, pre-judgment and post-judgment interest, enhanced damages, and costs.

## COUNT II – INFRINGEMENT OF THE '212 PATENT

68.     Katana hereby realleges paragraphs 1 through 67 as though fully set forth herein.

69.     Defendants directly and/or through its subsidiaries, affiliates, agents, and/or business partners, have in the past and continue to directly infringe at least claims 4, 6, and 8 of the '212 Patent pursuant to 35 U.S.C. §§ 271(a) by making, using, selling,  or offering to sell, and/or importing in the United States, the Accused Instrumentalities, including but not limited to the accused Planar Technology, Chips, and Products.

70.     On information and belief, the Planar Transistor Chips manufactured by Defendants (and/or other related entities that it controls) include a semiconductor device comprising a gate insulating film and a gate electrode stacked in this order on a substrate or well region of first conductive type, sidewall insulating films disposed on side surfaces of the gate electrode, a channel region formed in the semiconductor substrate or well region beneath the gate electrode, and source/drain regions of second conductive type elevated to above the semiconductor substrate or well region from both sides of the channel region, the source/drain regions being electrically isolated from the gate electrode by the gate insulating film and the sidewall insulating films, characterized in that: the semiconductor substrate or well region has diffusion regions of the first conductive type formed between the source/drain regions and the channel region, the diffusion regions having an impurity concentration higher than that of the semiconductor substrate or well region.

71.     On information and belief, the accused Planar Technology, Chips, and Products are materially the same with respect to infringement. The Planar Technology, Chips, and

Products are based on the same or substantially similar design rules and utilize the same or substantially similar architecture.

72.     Defendants, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, have committed and continue to commit acts of indirect infringement, including at least claims 1-11, 16-20, 22, and 24, pursuant to 35 U.S.C. §§ 271(b) and 271(c) by actively inducing or contributing to the acts of direct infringement performed by others in the United States, the State of Texas, and the Western District of Texas.

73.     Defendants have actual notice of the '212 Patent and the infringement alleged herein at least as early as July 2, 2018.

74.     On information and belief, Defendants have numerous lawyers and other active agents of Defendants and of its owned and controlled subsidiaries who regularly review patents and published patent applications relevant to technology in the fields of the Patents-in-Suit, specifically including patents directed to semiconductor devices issued to competitors such as Sharp, the original assignee of the '212 Patent.

75.     On information and belief, the Defendants themselves have been issued over 117,000 patents held in the name of one of the Defendants or a related entity, many of which are patents prosecuted in the USPTO in the same technology area as the '212 Patent, giving the Defendants intimate knowledge of the art in fields relevant to this civil action. The timing, circumstances and extent of Defendants obtaining actual knowledge of the '212 Patent prior to the commencement of this lawsuit will be confirmed during discovery.

76.     Defendants have induced and continue to induce through affirmative acts by each other, its customers, and other third parties, such as fab-less designers of Planar Transistor Chips

and end-consumers of Planar Products, to directly infringe the '212 Patent by making, using, selling, and/or importing the Accused Instrumentalities.

77.    The affirmative acts of inducement by Defendants include, but are not limited to, any one or a combination of: (i) designing infringing processors for manufacture according to specification; (ii) collaborating on and/or funding the development of the infringing processors and/or technology; (iii) soliciting and sourcing the manufacture of infringing processors; licensing and transferring technology and know-how to enable the manufacture of infringing processors; (v) enabling and encouraging the use, sale, or importation of infringing processors; enabling and encouraging the use, sale, or importation of infringing processors by its customers; and (vi) advertising the infringing processors and/or technology.

78.    Defendants knew that the induced conduct would constitute infringement, and intended that infringement at the time of committing the aforementioned acts, such that the acts and conduct have been and continue to be committed with the specific intent to induce infringement, or deliberately avoiding learning of the infringing circumstances at the time of committing these acts so as to be willfully blind to the infringement that was induced.

79.    Defendants have contributed and continue to contribute to the direct infringement of the '212 Patent by each other, its customers, and other third parties.

80.    Defendants import, export, make or sell parts, components, or intermediate products to customers and third parties that, once assembled, infringe upon the '212 Patent by the sale and/or use of the assembled processors and/or devices.

81.    Defendants make, use, sell, and/or offer to sell infringing semiconductor devices and/or processor chips, which are especially made to design and specification, and are not staple products or commodities with substantial non-infringing use.

16

82.     Defendants have failed to take adequate steps to determine whether or not they were infringing or would infringe the '212 Patent, despite having been on notice of and lacking permission to practice the '212 Patent.

83.     Therefore, Defendants are liable for infringement of the '212 Patent and its infringement has been and continues to be willful in nature.

84.     Plaintiff Katana has incurred and will continue to incur substantial damages, including monetary damages.

85.     Plaintiff Katana has been and continues to be irreparably harmed by Defendants' infringement of the '212 Patent.

86.     Therefore, Plaintiff Katana is entitled to an injunction, actual and/or compensatory damages, reasonable royalties, pre-judgment and post-judgment interest, enhanced damages, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Katana requests that judgment be entered in favor of Katana and against the Defendants, and that Katana be granted the following relief:

(i)     A declaration that the '861 Patent is valid and enforceable;

(ii)    A declaration that the '212 Patent is valid and enforceable;

(iii)   A declaration that Defendants have directly infringed one or more claims of the '861 Patent, either literally and/or under the doctrine of equivalents;

(iv)    A declaration that Defendants have indirectly infringed one or more claims of the '861 Patent;

(v)     A declaration that Defendants have directly infringed one or more claims of the '212 Patent, either literally and/or under the doctrine of equivalents;

(vi)    A declaration that Defendants have indirectly infringed one or more claims of the '212 Patent;

(vii)   An award of damages sufficient to compensate Katana for Defendants' infringement of the '861 Patent and the '212 Patent pursuant to 35 U.S.C. § 284;

(viii)  An award of prejudgment and post-judgment interest pursuant to 35 U.S.C. § 284;

(ix)    A payment of ongoing royalties in an amount to be determined for any continued infringement after the date that judgement is entered;

(x)     Treble damages for willful infringement as permitted under 35 U.S.C. § 284;

(xi)    An award of attorneys' fees incurred in prosecuting this action, on the basis that this is an exceptional case provided by 35 U.S.C. § 285;

(xii)   Enjoin each Defendant, its officers, subsidiaries, agents, servants, and employees, and all persons in active concert with any of the foregoing from further infringement of the '861 Patent and '212 Patent; and

(xiii)  Such other and further relief as this Court shall deem appropriate.

## **JURY DEMAND**

Plaintiff Katana demands a trial by jury of any and all issues triable of right before a jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## **RESERVATION OF RIGHTS**

Plaintiff's investigation is ongoing, and certain material information remains in the sole possession of Defendants or third parties, which will be obtained via discovery herein. Plaintiff expressly reserves the right to amend or supplement the causes of action set forth herein in accordance with Rule 15 of the Federal Rules of Civil Procedure.

Dated:  May 31, 2019                    Respectfully submitted,

                                        /s/ *Charles Ainsworth*

                                        William Cory Spence
                                        Jason Wejnert
                                        Alok Parikh
                                        SpencePC
                                        515 N. State St., Suite 1801

18

Chicago, Illinois 60654
312-404-8882
william.spence@spencepc.com
jason.wejnert@spencepc.com
alok.parikh@spencepc.com

Charles L. Ainsworth
Texas Bar No. 00783521
Robert Christopher Bunt (application pending)
Texas Bar No. 00787165
PARKER, BUNT & AINSWORTH, P.C.
100 East Ferguson, Suite 418
Tyler, Texas 75702
Tel: (903) 531-3535
charley@pbatyler.com
rcbunt@pbatyler.com

*ATTORNEYS FOR PLAINTIFF*